UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

CHRISTINE M. SERRATO,

    Plaintiff,

v.                                        Case No. 1:08-CV-780

SHORT TERM DISABILITY INCOME        HON. GORDON J. QUIST
PLAN FOR THE CLASS 46
EMPLOYEES OF LEAR
CORPORATION and LEAR
CORPORATION,

    Defendants.
_____/

## OPINION REGARDING ATTORNEY'S FEES AND COSTS

Pursuant to the Court's March 12, 2009, Order and Judgment awarding Plaintiff, Christine Serrato ("Serrato"), judgment on the administrative record and directing Defendants to pay Serrato $8,892 in benefits, Serrato has filed a motion for attorney fees and costs under ERISA. Defendants have filed their response. For the reasons set forth below, the Court concludes that an award of fees and costs in the amount of $16,803.90 is proper.

### AWARD OF FEES

ERISA § 502(g)(1), 29 U.S.C. § 1132(g)(1) provides: "In any action under this title . . . by a participant, beneficiary, or fiduciary, the court in its discretion may allow a reasonable attorney's fee and costs of action to either party."

District courts within the Sixth Circuit are to consider five factors in assessing the propriety of an award of fees and costs under ERISA: (1) the degree of the opposing party's culpability or bad faith; (2) the opposing party's ability to satisfy an award of attorney fees; (3) the deterrent effect of an award on other persons under similar circumstances; (4) whether the party requesting fees

sought to confer a common benefit on all participants and beneficiaries of an ERISA plan or resolve significant legal questions regarding ERISA; and (5) the relative merits of the parties' positions. *Moore v. LaFayette Life Ins. Co.*, 458 F.3d 416, 445 (6th Cir. 2006) (citing *Sec'y of Dep't of Labor v. King*, 775 F.2d 666, 669 (6th Cir. 1985)). "No single factor is determinative, and thus, the district court must consider each factor before exercising its discretion." *Moon v. Unum Provident Corp.*, 461 F.3d 639, 642-43 (6th Cir. 2006).

Serrato contends that the Court should exercise its discretion and grant fees, especially because Defendants and their claim administrator ignored the plain language of the Plan, imposed requirements not found in the Plan, disregarded Serrato's treating physician's medical opinion, and failed to obtain their own medical opinion supporting their decision to deny the claim. Defendants contend that fees are not appropriate in this case because the claims administrator did not deny benefits in bad faith but simply misinterpreted the language of the Plan.

    **1.**       **Defendants' Culpability or Bad Faith**

Defendants contend that there is no evidence that they acted in bad faith in denying Serrato's claim. They assert that the claims administrator adhered to the procedural requirements and honored Serrato's right to an appeal, that Defendants promptly responded to this lawsuit and filed all documents in a timely manner, and did nothing to hinder Serrato's claim for benefits. Defendants contend that this is simply a case in which their claims administrator mistakenly, in good faith, interpreted the Plan language as requiring a "complicated" pregnancy. In this regard, Defendants state that they did not ignore Dr. Kaczkofsky's opinions; instead, they misunderstood the significance of this evidence in light of their misinterpretation of the plan.

The Sixth Circuit has said that "'[a]n arbitrary and capricious denial of benefits does not necessarily indicate culpability or bad faith." *Moon*, 461 F.3d at 643 (quoting *Heffernan v. UNUM Life Ins. Co. of Am.*, 101 F. App'x 99, 109 (6th Cir. 2004)). In *Gaeth v. Hartford Life Insurance Co.*,

538 F.3d 524 (6th Cir. 2008), however, the court clarified that Sixth Circuit "caselaw by no means *precludes* a finding of culpability or bad faith based only on the evidence that supported a district court's arbitrary-and-capricious determination." *Id.* at 530. For example, the court observed, in *Hoover v. Provident Life & Accident Insurance Co.*, 290 F.3d 801, 809-10 (6th Cir. 2002), culpability was found where the plan administrator denied disability benefits based solely on the opinion of a physician employed by the insurance company who neither examined the claimant nor considered the substantial evidence in the record indicating that the claimant was disabled. *Id.* The *Gaeth* court also found culpability:

> Hartford might very well have had a good-faith basis for believing that Gaeth was no longer disabled. But it terminated his benefits without a single piece of current medical evidence regarding his physical condition as it relates to the occupation for which he had been deemed disabled, as the district court explained at length. Hartford is therefore culpable for making a benefits determination that was unsupported by competent medical evidence.

*Id.* at 530-31.

In this case, Defendants' asserted reliance on an "innocent misinterpretation" of the Plan language renders Defendants no less culpable than Hartford in *Gaeth* or *Hoover*. Akin to the defendant's reliance solely on favorable evidence without consideration of substantial evidence supporting the claimant in *Hoover*, in this case Defendants ignored what can only be characterized as clear and unambiguous language in the Plan that rendered any "pregnancy" a sickness under the plan. Rather than applying this plain language, Defendants engrafted the requirement of pregnancy complications onto the Plan language when nothing in the Plan suggested such a limitation. In some respects, Defendants could be deemed even more culpable than the defendants in *Gaeth* and *Hoover*. That is, while it is plausible that in some instances a plan administrator may fail to consider or appreciate the significance of the claimant's evidence, or rely too heavily upon the opinions of its own physicians, a plan administrator should be expected to be familiar with and apply the unambiguous terms of its own plan. This factor thus supports an award of fees.

**2.      Defendants' Ability to Satisfy an Award of Attorney Fees**

Defendants concede that they "are certainly capable of satisfying an award of reasonable attorney's fees . . . ." (Defs.' Br. at 3.) This factor thus also supports an award of fees. Defendants argue, however, (as the Court understands it) that Serrato should be expected to bear the cost of her claim because she sought only $8,892 in benefits and that the Court should not award fees merely because a claimant's counsel chooses to run up a large bill in reliance on a fee award.

Defendants cite no authority for the proposition that the size of an award of benefits should have any bearing upon the decision to award fees. The Court declines to consider the amount of benefits as a factor affecting the decision to award fees because allowing for such consideration could influence plan administrators to deny smaller claims, regardless of the merits of the denial, secure in the knowledge that the claimant would likely not file suit due to the small amount at issue and the lack of any prospect for recovering attorney fees. On the other hand, the amount of the attorney fee claim, while not a factor affecting the decision to award fees, may be considered as part of the inquiry as to the reasonableness of the requested award.

**3.      The Deterrent Effect of Awarding Attorney Fees**

Defendants contend that a fee award will have no deterrent effect upon other plan administrators. They argue that first, the Court has interpreted the Plan language and there will be no need to deter their future misinterpretation, and second, the Court's ruling will have no deterrent effect upon other plan administrators because unintentional misinterpretation of plan provisions cannot generally be deterred. As for the first point, it goes without saying that Defendants should need no future deterrent in light of the Court's decision on the merits, because their continued adherence to their prior interpretation would surely evidence bad faith. Defendants are wrong on the second point. As the Court has already noted, the language of the plan was simple and unambiguous; no complicated plan language was at issue. Even if, as Defendants say, they simply

4

misinterpreted the plan, an award of fees would serve notice to other plan administrators that they should be familiar with the clear language and requirements of the plans they administer.

### 4. The Common Benefit

This consideration has two separate aspects. First, did the party requesting fees seek to confer a benefit upon all plan participants? Second, did that party seek to resolve significant legal questions concerning ERISA? *Moon*, 461 F.3d at 645. Serrato candidly admits that she sought only individual benefits and did not seek to confer a common benefit upon others. *See Gaeth*, 538 F.3d at 533. In addition, this case did not involve significant legal issues under ERISA. Therefore, this factor weighs against an award of fees.

### 5. Relative Merit of the Parties' Positions

This factor requires a consideration of the parties' relative positions. In *Gaeth*, the district court failed to consider this factor. Concluding that this was an abuse of discretion, the court of appeals observed that although the district court found no objective medical evidence supporting the defendant's conclusion that the claimant was able to return to his previous position, the district court also said that there was minimal objective evidence of the claimant's disability. *Id.* at 534. The Sixth Circuit held that given the weakness of the claimant's position, it was possible that the defendant might eventually prevail in showing that the claimant was no longer disabled. *Id.* It further observed that the merits of the claimant's position were at best questionable when compared to the merits of the defendant's position. *Id.*

In this case, the relative merits favor an award of fees. For the reasons more fully set forth in the Court's March 12, 2009, Opinion, Defendants' position lacked merit because it was based upon an unreasonable interpretation of unambiguous plan language, while Serrato's position had substantial merit because it was based upon a straightforward interpretation of the plan language. This factor thus weighs in favor of an award.

5

Considering all of the pertinent factors, the Court concludes that an award of attorney fees is appropriate in this case. In reaching this conclusion, the Court gives significant weight to Defendants' culpability and the relative merits of the parties' positions, as discussed above in more detail. In addition, as previously mentioned, an award of fees in this case should serve as a deterrent against other plan administrators ignoring the plain meaning of plan provisions and adding conditions of eligibility not dictated by the plan. The fact that Serrato sought to benefit only herself is not a significant consideration in the Court's analysis.

### REASONABLE FEES AND COSTS

Serrato requests an award of attorney fees in the amount of $21,362.50 and costs in the amount of $141.40. In support of her request, Serrato submits affidavits from her counsel, James H. Lohr and Elizabeth C. Chalmers, and an itemized billing statement. According to this information, attorney Lohr, a partner, spent 73.90 hours on this case at an hourly rate of $250, and attorney Chalmers, an associate, spent 16.5 hours on this case at an hourly rate of $175.

In ERISA cases, courts use the familiar lodestar approach to determine a reasonable attorney fee. *See Ford v. Uniroyal Pension Plan*, 154 F.3d 613, 621 (6th Cir. 1998); *Lain v. UNUM Life Ins. Co. of Am.*, 279 F.3d 337, 348 (5th Cir. 2002); *Soltysiak v. Unum Provident Corp.*, 480 F. Supp. 2d 970, 975-76 (W.D. Mich. 2007). The starting point in the analysis is the "lodestar figure," which is the product of the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate. *See Wayne v. Vill. of Sebring*, 36 F.3d 517, 531 (6th Cir. 1994) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 433, 103 S. Ct. 1933, 1939 (1983)). Duplicative and unnecessary hours should be excluded from the total number of reasonable hours. *Id.* "'The primary concern in an attorney fee case is that the fee awarded be reasonable,' that is, one that is adequately compensatory to attract competent counsel yet which avoids producing a windfall for lawyers."

6

*Adcock-Ladd v. Sec'y of Treasury*, 227 F.3d 343, 349 (6th Cir. 2000) (quoting *Reed v. Rhodes*, 179 F.3d 453, 471 (6th Cir. 1999)).

Beginning with the hourly rate, as noted, attorney Lohr's rate is $250 per hour and attorney Chalmers' rate is $175 per hour. Defendants do not object to these rates, and based upon its own experience in handling attorney fee motions as well as its knowledge of the prevailing rates in the Grand Rapids community, the Court concludes that the requested hourly rates are reasonable.

The Court next considers the number of hours expended. Defendants' primary objection is that the number of hours Serrato's counsel spent on the case is excessive and, therefore, unreasonable. In particular, Defendants contend that the 50.8 hours that counsel spent on preparing Serrato's brief in support of judgment on the administrative record is excessive in light of the simple nature of this case. Defendants further contend that the small amount at issue does not justify the size of the award Serrato requests and that any fee award should not exceed the $8,892 that Serrato recovered.

Regarding the relationship between the amount of the recovery and the amount of an attorney's fee award, the Supreme Court has said that while "[t]he amount of damages a plaintiff recovers is certainly relevant to the amount of attorney's fees to be awarded . . . [i]t is . . . only one of many factors that a court should consider in calculating an award of attorney's fees." *City of Riverside v. Rivera*, 477 U.S. 561, 574 106 S. Ct. 2686, 2694 (1986). In *City of Riverside*, the Court held that the amount of a fee award was reasonable, even though it was roughly seven times the total of compensatory and punitive damages the plaintiffs recovered. Thus, the Court declined to "adopt a strict rule that attorney's fees under [42 U.S.C.] § 1988 be proportionate to damages recovered . . . ." *Id.* at 580, 106 S. Ct. at 2697. *See also United Auto. Workers Local 259 Soc. Sec. Dep't v. Metro Auto Ctr.*, 501 F.3d 283, 291-92 (3d Cir. 2007) (concluding in ERISA case that the district

court did not err by refusing to adjust the lodestar calculation downward because the fee award was disproportionate to the damage award).

Turning to Defendants' specific objection, based upon its review of the billing statement, the Court determines that Serrato's counsel spent 50.3 hours on the preparation of the brief in support of judgment on the administrative record, which differs from Defendants' calculation by .5 hour. Because the issues were not complex and the administrative record was not lengthy, thirty hours would be a sufficient amount of time to review the administrative record and prepare the brief, and forty hours would be a sufficient amount of time to complete the remainder of the work on this case. The total reasonable number of hours is thus 70, with 15.4 hours to be deducted from attorney Lohr's time and 5 hours deducted from attorney Chalmers' time. The hours, then, are 58.5 hours for attorney Lohr and 11.5 hours for attorney Chalmers.

The total fee award, based upon the approved hourly rates and number of hours, is $16,637.50. The Court declines to make any further adjustments to this amount because it is reasonable in light of all the circumstances of this case. Finally, the Court will award Serrato $141.40 in costs.

## CONCLUSION

For the foregoing reasons, the Court will grant Serrato's motion for attorney fees and costs and award $16,637.50 in attorney fees and $141.40 in costs.

An Order consistent with this Opinion will be entered.


Dated: May 19, 2009                                      /s/ Gordon J. Quist
                                                         GORDON J. QUIST
                                                 UNITED STATES DISTRICT JUDGE